**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NORTH AMERICAN SPORT KARATE ASSOCIATION INC.**,
a Minnesota corporation,

**Plaintiff,**

**v.** **Case No.:**

**WORLD TOUR PROMOTERS, LLC**,
a Florida limited liability company, and
**MICHAEL McCOY**,
an individual,

**Defendants.**
_____________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

Plaintiff, North American Sport Karate Association Inc. ("***Plaintiff***" or "***NASKA***"), by and through its undersigned counsel, files this Complaint against Defendants, World Tour Promoters, LLC ("***World Tour***") and Michael McCoy ("***McCoy***") (collectively, "***Defendants***"), and states as follows:

## Nature of This Action

1. This is a civil action for trademark infringement and unfair competition arising under the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and Florida state common law.

2. With rights dating back to 1986, Plaintiff is engaged in the sanctioning, rating, and regulation of competitive sport karate events across the United States.

3. Larry R. Carnahan (“***Carnahan***”) is the sole incorporator and shareholder of Plaintiff.

4. Plaintiff is the owner of United States Registration No. 7,721,429 for the NASKA® service mark, registered March 11, 2025, with a first use date of January 1, 1986.

5. Plaintiff has become aware that, despite Plaintiff’s well-established trademark rights in the NASKA® name and mark, Defendants have recently begun using the NASKA® mark without authorization by, among other things, creating and operating a new Facebook page and Instagram account using the NASKA® mark, holding themselves out to the public as the authorized leadership of NASKA, and purporting to conduct the business of NASKA through Defendant World Tour Promoters, LLC, all in infringement of Plaintiff’s rights in the NASKA® mark and unfair

competition with Plaintiff. Despite Plaintiff's demands, Defendants have refused to cease and desist from their willfully infringing use of the NASKA® mark and their unfair competition.

**Parties, Jurisdiction, and Venue**

6. Plaintiff is a Minnesota corporation with its principal place of business in Shoreview, Minnesota. Plaintiff conducts its activities, including the sanctioning, rating, and regulation of competitive sport karate events, throughout the United States, including in Florida.

7. Defendant World Tour Promoters, LLC is a Florida limited liability company formed effective March 4, 2026, with an address in Newberry, Florida.

8. Defendant Michael McCoy is an individual with an address in Ocoee, Florida. McCoy purports to hold the title of President of World Tour Promoters, LLC and claims to be the President of the "NASKA Board of Directors."

9. The federal law claims of trademark infringement and unfair competition asserted in this action arise under the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq. This Court has original jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C.

§ 1338(a) in that this Complaint states an action based upon a federal question relating to trademarks.

10. The state law claims of common law trademark infringement and common law unfair competition asserted in this action are so related to the federal law claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

11. This Court also has original jurisdiction over the state law claims of common law trademark infringement and common law unfair competition asserted in this action pursuant to 28 U.S.C. § 1338(b) because they are joined with substantial and related claims asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

12. This Court has personal jurisdiction over Defendants pursuant to Florida Statutes § 48.193(1)(a) in that Defendants are domiciled in Florida and have been engaging in tortious acts in Florida, namely, operating a business under the infringing NASKA® mark, creating and maintaining unauthorized social media pages and accounts using the NASKA® mark, and holding themselves out to the public as the authorized representatives of NASKA, all within the State of Florida.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants, having subjected themselves to personal jurisdiction in this judicial district, reside in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred or are occurring in this judicial district.

## Common Factual Allegations

### A. Larry Carnahan and the Founding of NASKA

14. The North American Sport Karate Association, commonly known as "NASKA," has been in continuous operation in the sport karate community since 1986.

15. The North American Sport Karate Association was founded in 1986.

16. On or about March 10, 1989, Carnahan incorporated the business in the State of Minnesota under the name "North American Sport Karate Association, Inc.," of which Carnahan was at all times the sole shareholder, director, and officer. Carnahan transferred his rights in the NASKA® name and mark to this corporation, and this corporation owned and operated the North American Sports Karate Association business for

nearly twenty-five (25) years until its dissolution on or about February 26, 2014.

17. During the period of time this corporation owned and operated the North American Sports Karate Association business, the corporation federally-registered with the United States Patent and Trademark Office ("***USPTO***") the NASKA mark as part of a design logo:

under United States Registration No. 1,633,489, applied for on January 4, 1990, and issued on January 29, 1991.

18. As with all trademark applications filed with the USPTO, this application was published for opposition by anyone who believed they would be damaged by the registration of the mark. No opposition was filed by anyone, and the mark was registered and remained on the USPTO's Principal Register for ten (10) years, until it was canceled when the corporation missed a maintenance filing for the registration.

19. Pursuant to 15 U.S.C. § 1072, though, this registration served as constructive notice of the corporation's claim of ownership of the NASKA mark, including as notice to Defendant McCoy and all others involved with

the North American Sports Karate Association. No one at the time objected or claimed any inconsistent rights in the NASKA® name and mark.

20. Upon the corporation's dissolution in 2014, the corporation's remaining property, including, but not limited to, the NASKA name and mark, was distributed to Carnahan as its sole shareholder. Thereafter, Carnahan continued to personally own and operate the North American Sports Karate Association business, at all times exercising control over its operations, direction, and use of the NASKA name and mark.

21. At all times relevant to this Complaint, Carnahan, either individually or through a corporation he owned and controlled, directed all aspects of North American Sports Karate Association's operations, including the sanctioning, rating, and regulation of competitive sport karate events across the United States.

22. From time to time during its history, the North American Sports Karate Association business maintained a board of advisors, comprised of individuals in the sport karate industry whose input and advice Carnahan periodically sought. This board served in an advisory capacity to Carnahan, but was not a board of directors with any sort of governance authority, ownership, or control. The advisors participated in the North American Sports Karate Association's activities, but held no ownership interest in or

governance authority over the North American Sports Karate Association business or its assets.

**B. Re-Incorporation of NASKA**

23. In 2021, Carnahan began the process of cleaning up and re-formalizing the organizational structure of the North American Sports Karate Association.

24. On January 26, 2021, Carnahan re-incorporated the North American Sports Karate Association or "NASKA" business in the State of Minnesota as "North American Sport Karate Association Inc." (the "***Corporation***") by filing Articles of Incorporation with the Minnesota Secretary of State under File Number 1213153300023. *See* **Exhibit 1**, Articles of Incorporation. Carnahan was the sole incorporator. *See* **Exhibit 2**, Uncertified Share Notice.

25. The Articles of Incorporation authorize the Corporation to issue a maximum of one (1) share of stock. *See* **Exhibit 1**.

26. At the time of the Corporation's formation, Carnahan was issued the Corporation's sole authorized share of common stock (Share No. 1) in exchange for value received, including his contribution of the NASKA name and mark, goodwill, and associated assets and operations to the Corporation. *See* **Exhibit 2**.

27. Carnahan has continuously held Share No. 1 of the Corporation from the date of its issuance to the present date. At no time has Carnahan sold, transferred, assigned, pledged, encumbered, or otherwise disposed of any ownership interest in such share, nor has any other person or entity acquired any ownership interest therein. Carnahan is, and has at all relevant times been, the sole record and beneficial owner of one hundred percent (100%) of the issued and outstanding shares of common stock of the Corporation. *See* **Exhibit 3**, Stock Ledger.

28. Following the Corporation's formation in 2021, the NASKA business was owned and operated by the Corporation.

29. The board of advisors and affiliated promoters participated in the Corporation's activities and conducted NASKA-sanctioned events under the authority of the Corporation, without objection to the corporate structure or to Carnahan's sole ownership of the Corporation.

30. As part of the formalization of NASKA, Carnahan also pursued again federal trademark registration for the NASKA service mark.

31. The board of advisors did not oppose any of Carnahan's efforts to formalize the organization, including the incorporation, adoption of governance documents, or the pursuit of trademark registration, until recently when Defendants attempted to hijack the business.

**C. The NASKA® Mark**

32. On June 10, 2024, Plaintiff filed an application with the USPTO for registration of the NASKA mark (Serial No. 98/592,441).

33. On March 11, 2025, the USPTO issued United States Registration No. 7,721,429 to Plaintiff for the NASKA® mark for services in International Class 41, including:

> Martial arts instruction; organizing sporting events, namely, karate competitions and tournaments; conducting martial arts competitions; conducting martial arts tournaments; entertainment in the nature of martial arts tournaments; providing a website featuring blogs and non-downloadable publications in the nature of articles, brochures, blog posts, and videos in the field of martial arts; and providing online non-downloadable videos in the field of martial arts.

*See* **Exhibit 4**, Certificate of Registration.

34. The registration identifies a first use date of January 1, 1986, and a first use in commerce date of January 1, 1986. *See* **Exhibit 4**.

35. This registration is valid and subsisting and has not been cancelled, revoked, or abandoned.

36. This registration serves as prima facie evidence of the validity of the registered NASKA® mark and of the registration of the mark, of the Plaintiff's ownership of the registered NASKA® mark, and of Plaintiff's

exclusive right to use the registered NASKA® mark in commerce on or in connection with the goods or services specified in the registration.

37. Plaintiff owns valuable rights and goodwill in its NASKA® mark. Plaintiff and its predecessors-in-interest have expended a great deal of time and effort over the years building and promoting the NASKA® brand, resulting in substantial goodwill and recognition within the sport karate community.

38. As a result of Plaintiff's and its predecessors' continuous use, promotion, and operation under the NASKA® mark, the widespread use of the mark in connection with sport karate sanctioning, rating, and regulation, and the quality of the services provided under the mark, the NASKA® mark has come to be, and now is, well and favorably known to the trade and public. The NASKA® mark is a means by which Plaintiff's services are identified as originating with Plaintiff.

39. As a result of Plaintiff's and its predecessors' use and promotion of the NASKA® mark, valuable goodwill in the organization as represented by the NASKA® mark has been generated. The goodwill is symbolized by the NASKA® mark, and Plaintiff is the owner of the goodwill and the mark.

### D. Appointment of Hunter Lyon as President

40. Carnahan, as sole shareholder, brought Hunter B. Lyon ("***Lyon***") into the organization and appointed him to serve in a leadership role. Carnahan made Lyon a Director and the President of NASKA.

41. On March 16, 2026, Carnahan, as the sole shareholder of the Corporation, executed a Resolution of the Sole Shareholder that, among other things, ratified the issuance of the Corporation's sole share to Carnahan, removed all existing members of the board (including anyone claiming without authorization to be a member), and appointed a new Board of Directors and Executive Committee. *See* **Exhibit 5**, Resolution of the Sole Shareholder.

42. On March 17, 2026, the newly constituted Board of Directors of the Corporation executed a Resolution of the Board of Directors formally appointing Hunter B. Lyon as President of the Corporation, with full authority to act on behalf of the Corporation in all matters consistent with the direction of the Sole Shareholder and the Board of Directors. *See* **Exhibit 6**, Resolution of the Board of Directors.

43. On March 11, 2026, Plaintiff's corporate counsel issued a formal demand letter to all concerned parties, including all promoters, administrators, and individuals acting on behalf of or in connection with

NASKA, notifying them of the corporate governance actions taken and demanding immediate compliance. The demand letter confirmed that Hunter Lyon had been duly appointed as President of NASKA and demanded that all individuals immediately cease and desist from any and all unauthorized use of NASKA's social media accounts, websites, email accounts, domain names, logos, trademarks, trade names, and any other corporate assets or intellectual property. *See* **Exhibit 7**, Demand Letter.

**E. Defendants' Infringement**

44. Despite having no authority from NASKA, its sole shareholder, its Board of Directors, or its duly appointed President, the board of advisors—acting through Defendant World Tour Promoters, LLC and Defendant McCoy—has undertaken to use the NASKA® mark without authorization and in a manner likely to cause confusion among the trade and the public.

45. On or about March 9, 2026, the board of advisors, none of whom was a shareholder or member of the Board of Directors of the Corporation, purported to hold an election for "President" of the "NASKA Board of Directors." McCoy was declared the winner of this purported election. *See* **Exhibit 8**, Limited Release of Confidential Vote.

46. The board of advisors then publicly announced that McCoy "is now the President of the NASKA Board of Directors and the World Tour Promoters, LLC (the corporate entity through which the Board operates)." *See* **Exhibit 9**, Facebook post.

47. This purported election was unauthorized and without any legitimate corporate authority. The board of advisors was not the Board of Directors of the Corporation and had no authority to elect officers or take governance actions on behalf of the Corporation.

48. Defendants have used a new Facebook page[1] and created a new Instagram account[2] using the NASKA® name and mark, through which they hold themselves out to the public as the authorized leadership and operators of NASKA. *See* **Exhibit 10**, World Tour Facebook Page; **Exhibit 11**, World Tour Instagram account.

49. The unauthorized Facebook page and Instagram account use the NASKA® mark to promote Defendants' activities and purports to speak on behalf of NASKA.

---

[1] Facebook, NASKA World Tour, https://www.facebook.com/naskaworldtour (last visited Apr. 4, 2026).

[2] Instagram, NASKA World Tour, https://www.instagram.com/naskaworldtour (last visited Apr. 4, 2026).

50. Defendants' creation and operation of the unauthorized NASKA Facebook page and Instagram account, and their use of the NASKA® mark in connection therewith, is causing confusion among the sport karate community and the public as to the source, sponsorship, and affiliation of Defendants' activities.

51. Members of the public encountering Defendants' Facebook page, Instagram account, and communications are likely to believe, mistakenly, that Defendants' activities are authorized by, affiliated with, or sponsored by NASKA, when they are not.

52. On information and belief, Defendants have also purported to conduct business on behalf of NASKA, including by communicating with promoters, stakeholders, and members of the sport karate community using the NASKA® name and mark, without authorization.

53. By virtue of the foregoing, Defendants are infringing upon Plaintiff's rights in the NASKA® mark and unfairly competing with Plaintiff.

54. Defendants' use in connection with their activities of the NASKA® mark is likely to cause confusion, mistake, or deception among the trade and the public.

55. Despite Plaintiff's demands that Defendants cease and desist from their infringement and unfair competition, Defendants have

intentionally, actively, and deliberately refused to comply, have not ceased and desisted from their wrongful use of the NASKA® mark, and have intentionally, willfully, and deliberately persisted in their infringement of Plaintiff's trademark rights and unfair competition with Plaintiff.

56. Defendants' intentional and willful infringement of Plaintiff's trademark rights and unfair competition is causing irreparable injury to Plaintiff, and, unless an injunction is granted, will continue to cause irreparable injury to Plaintiff due to the confusion, mistake, and deception that will be and has been generated among the trade and the public. Plaintiff has suffered and will continue to suffer damage, the exact amount of damage being unknown to Plaintiff at this time.

57. The damage to Plaintiff is, and will continue to be, irreparable because, among other reasons, of the continuing nature of the trademark infringement and unfair competition, which would necessitate a multiplicity of suits for damages if the continuance of the wrongs is not enjoined.

58. All conditions precedent to the institution and maintenance of this action have occurred or been performed by Plaintiff.

59. Plaintiff has engaged the law firm of Shumaker, Loop & Kendrick, LLP to represent it and has obligated itself to pay its attorneys a reasonable fee for their services in this action.

## COUNT I

## Federal Trademark Infringement and Unfair Competition

## (Lanham Act)

60. Plaintiff realleges paragraphs 1 through 59 of this Complaint as if fully restated herein.

61. This is an action for an injunction arising under 15 U.S.C. §§ 1114, 1116, and 1125, and for damages arising under 15 U.S.C. §§ 1114, 1117, and 1125.

62. Defendants have, by virtue of their above-described acts, willfully infringed upon Plaintiff's rights in its federally-registered NASKA® mark in violation of 15 U.S.C. § 1114, and have unfairly competed with Plaintiff by falsely designating their activities as originating with Plaintiff or with a concern legitimately connected with Plaintiff in violation of 15 U.S.C. § 1125.

63. Defendants' above-described acts of infringement and unfair competition have been committed, and are continuing to be committed, with the knowledge that their use of the NASKA® mark is intended to be used to cause confusion, or to cause mistake, or to deceive.

64. Defendants' above-described acts of infringement and unfair competition have caused irreparable injury to Plaintiff and will continue to

cause irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violating Plaintiff's trademark rights and competing unfairly with Plaintiff due to the confusion, mistake, or deception that will likely be generated among the trade and the public as a consequence of the above-described acts of infringement and unfair competition. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

1. entering an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademark rights in the NASKA® mark, from unfairly competing with Plaintiff in any manner whatsoever in connection with the operation of their activities, and from continuing to operate in any manner tending to confuse or deceive the public into believing that their activities are in any way connected with, sponsored by, or affiliated with Plaintiff;

2. ordering Defendants to immediately cease all use of the NASKA® mark, including, but not limited to, removing or causing to be removed any and all Facebook pages, Instagram accounts, social media accounts, websites, and other online or offline content using or displaying the NASKA® mark;

3. ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, attorneys' fees, costs, and prejudgment interest, as may be shown by the evidence;

4. awarding up to three (3) times any actual damages sustained by Plaintiff;

5. awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

6. awarding Plaintiff costs of this action;

7. awarding Plaintiff its reasonable attorneys' fees and costs; and

8. awarding Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II

## Common Law Trademark Infringement and Unfair Competition

65. Plaintiff realleges paragraphs 1 through 59 of this Complaint as if fully restated herein.

66. This is an action for an injunction and for damages arising under Florida common law.

67. Plaintiff owns valuable common law rights and goodwill in its NASKA® mark as a result of its continuous use of the mark in Florida and elsewhere.

68. Defendants have, by virtue of their above-described acts, infringed upon Plaintiff's common law trademark rights and unfairly competed with Plaintiff.

69. Defendants' above-described acts of infringement have been committed, and are continuing to be committed, with the knowledge that

their use of the NASKA® mark is intended to be used to cause confusion, or to cause mistake, or to deceive.

70. Defendants' above-described acts of infringement have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violating Plaintiff's trademark rights due to the confusion, mistake, or deception that will likely be generated among the trade and the public as a consequence of the above-described acts of infringement. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment:

1. entering an injunction preliminarily during the pendency of this action, and thereafter permanently, enjoining and restraining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from infringing Plaintiff's trademark rights and unfairly competing with Plaintiff in any manner whatsoever in connection with the operation of their activities, and from continuing to operate in any manner tending to confuse or deceive the public into believing that their activities are in any way connected with, sponsored by, or affiliated with Plaintiff;

2. ordering an accounting of and awarding Plaintiff such damages, lost profits, royalties, costs, and prejudgment interest, as may be shown by the evidence;

3. awarding Plaintiff interest on such profits and damages at the highest rate allowed by law;

4. awarding Plaintiff costs of this action; and

5. awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all matters so triable.

Dated: April 7, 2026

Respectfully submitted,

/s/ J. Todd Timmerman
J. Todd Timmerman, Lead Counsel
Florida Bar No. 0956058
ttimmerman@shumaker.com
Samantha A. Regala
Florida Bar No. 1032553
sregala@shumaker.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, FL 33602
Telephone: 813-229-7760
Facsimile: 813-229-1660

*Counsel for Plaintiff, North American Sport Karate Association Inc.*